**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maria Griego, et al., | No. CV-22-01281-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| BMW of North America LLC, | |
| Defendant. | |

Defendant BMW of North America LLC ("Defendant") has filed a Motion for Summary Judgment (Doc. 49) under Federal Rule of Civil Procedure 56, arguing: (1) Plaintiffs Maria Griego and Robert Romero ("Plaintiffs") cannot establish the alleged defect in the air bag was present when Defendant first sold the vehicle at issue; and (2) Plaintiffs' vehicle conformed with state of the art design at the time it was first manufactured and sold. (*Id*. at 1). The matter is fully briefed. (Docs. 59 (Plaintiffs' Response); 62 (Defendant's Reply)). For the following reasons, the Court denies Defendant's Motion.[1]

**I.    Background**

Plaintiffs allege that Decedent Roberto Griego-Romero ("Decedent") was killed

---

[1] Plaintiffs have also asked the Court to take Judicial Notice of the U.S. Department of Transportation regulations "Guidance on Valuation of a Statistical Life in Economic Analysis." (Doc. 48). This Motion is fully briefed. (Docs. 53–54). Defendant also filed a Motion to Strike which is also fully briefed. (Docs. 58, 60–61). The Court notes that this issue should be dealt with by means of a Motion *in Limine* rather than a pre-trial motion, therefore, the Court will deny Plaintiff's Motion without prejudice to renew. Plaintiffs may renew their Motion as a Motion *in Limine* at the appropriate time.

when his 2004 BMW 325i ("the BMW") collided with another vehicle causing the BMW's airbag, manufactured by the Takata Corporation, to deploy and shoot metal shrapnel into Decedent's abdominal area. (Doc. 1 at ¶ 1 (Plaintiffs' Complaint)). Decedents parents (Plaintiffs), Decedent's statutory beneficiaries, brought a claim of strict liability against Defendant on Decedent's behalf. (*Id*. at ¶¶ 8–13). Defendant now seek summary judgment on Plaintiffs' claim. (Doc. 49).

**II.   Discussion**

Defendants seek summary judgement on Plaintiffs' claim of strict liability, arguing that (1) Plaintiffs cannot establish, as a matter of law, that the defect Plaintiffs alleged to exist in the BMW was present when Defendant sold it; and (2) the BMW's airbag conformed with the state of the art at the time the airbag was first sold by Defendant. (Doc. 49 at 1). The Court will address each argument in turn.

**A.   Summary Judgment Legal Standard**

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" when a reasonable jury could return a verdict for the nonmoving party. *Id*. Here, a court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994).

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). Where the moving party will have the burden of

proof on an issue at trial, the movant must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail "merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id* (citing *Celotex Corp.*, 477 U.S. at 323). If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or otherwise as provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e). In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).

### B. Strict Product Liability

Defendant first seeks summary judgment on Plaintiffs' strict liability claim, arguing that Plaintiffs cannot establish the Vehicle's airbag was defective at the time it was sold by Defendant. (Doc. 49 at 7). Plaintiffs argue the Vehicle's airbag inflator was defective at the time of sale and that this defective design was inherent to all driver-side airbag inflators installed on all 2004 BMW 3-series vehicles. (Doc. 59 at 4). Plaintiff also notes that Defendant "used a propellant based on ammonium nitrate, an explosive, which decomposes over time, causing it to combust violently when triggered." (*Id.*)

Federal district courts apply state law to products liability claims brought in federal court pursuant to diversity jurisdiction. *Adams v. Synthes Spine Co.*, 298 F.3d 1114, 1117 (9th Cir. 2002). "The doctrine of strict products liability is a public policy device to spread the risk from one to whom a defective product may be a catastrophe, to those who marketed the product, profit from its sale, and have the know-how to remove its defects before placing it in the chain of distribution." *State Farm Ins. Companies v. Premier Manufactured Sys., Inc.*, 142 P.3d 1232, 1234 (Ariz. Ct. App. 2006) (internal citations omitted). Strict products liability "does not rest on traditional concepts of fault. For

instance, a strict products liability plaintiff "does not have to prove the defendant was negligent." *Id*. (citations omitted). In Arizona, to establish a *prima facie* case of strict products liability, the plaintiff must show that: (1) the product is defective and unreasonably dangerous; (2) the defective condition existed at the time it left defendant's control; and (3) the defective condition is the proximate cause of the plaintiff's injuries and property loss. *Dietz v. Waller*, 685 P.2d 744, 747 (Ariz. 1984); *Bonar v. General Motors Corp.*, 2009 WL 44872, * 4 (Ariz. Ct. App. 2009).

Under element one, three types of defects can result in an unreasonably dangerous product: (1) manufacturers defects, (2) design defects, and (3) informational defects. *Dillon v. Zeneca Corp.*, 202 Ariz. 167, 172, 42 P.3d 598, 603 (Ariz. Ct. App. 2002). A manufacturers defect is "flawed as a result of something that went wrong during the manufacturing process." *St. Clair v. Nellcor Puritan Bennett LLC*, 2011 WL 5331674, at *4 (D. Ariz. Nov. 7, 2011) (quoting *Gomulka v. Yavapai Mach. & Auto Parts, Inc.*, 745 P.2d 986, 988–89 (Ariz. Ct. App. 1987)). A defectively designed product is "one that is made as the manufacturer intended it to be but that is unreasonably dangerous." *Id*. While Plaintiffs' specific defect theory is not readily cognizable from their complaint, based on their responsive brief (Doc. 59), the Court construes their theory as one for design defect.[2] (Docs. 59 at 4; 1 at ¶ 10).

A design defect claim "begins with the assertion that a manufacturer produced a product that fails to meet the purpose for which it is designed." *Jones v. Medtronic Inc.*, 411 F. Supp. 3d 521, 531 (D. Ariz. 2019) (citing *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1194 (9th Cir. 2007)). A negligent design case focuses on "whether the defendant's conduct was reasonable in view of a foreseeable risk at the time of design of the product." *Id*. (citing *St. Clair*, 2011 WL 5331674, at *5). In Arizona, two tests may be used in determining whether a product is defectively designed: the Consumer Expectation Test or

---

[2] To the extent Plaintiffs also allege a manufacturers defect claim, the Court also finds that Plaintiffs have produced sufficient evidence to show that the airbag did not perform as intended or expected. *Lockhart v. Techtronic Indus. N. Am. Inc.*, 2023 WL 3440441, at *5 (D. Ariz. May 12, 2023) (stating that a plaintiff's manufacturers defect claim will survive summary judgment if they can show that the product did not perform as the manufacturer intended or as the customer would expect).

the Risk/Benefit Analysis Test. *See Martinez v. Terex Corp.*, 241 F.R.D. 631, 641 (D. Ariz. 2007).

The first test Arizona courts apply is the "Consumer Expectation Test" which arises when "a product is in a 'defective condition unreasonably dangerous' and the product fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonable manner." *Id*. (citing *Stilwell*, 482 F.3d at 1194). The Consumer Expectation Test finds that a defective product is unreasonably dangerous when "its inherent danger exceeds the expectation of the ordinary user or consumer." *Id*. (citing *Gomulka*, 745 P.2d at 989). Because the Consumer Expectation Test is met here, the Court will not apply the Risk/Benefit Analysis Test.[3]

### 1. Plaintiffs' Defect Allegations

Plaintiffs' theory is that Defendant sold the BMW with its component parts, including the airbag, and that the airbag was "defective, unfit, and unreasonably dangerous for its intended and foreseeable" purpose. (Doc. 1 at ¶10). Plaintiffs also alleged that the National Highway Traffic Safety Administration ("NHTSA") issued a recall on BMW 3 Series vehicles' airbags noting that the airbag's inflator could rupture which could result in metal fragments striking the vehicles' occupants. (*Id*. at ¶ 11). Defendant argues it is entitled to summary judgment because it is undisputed that the defect did not exist at the time Defendant sold the vehicle. (Doc. 49 at 7). Defendant contends that Plaintiffs' own expert, Michael A. Dicicco ("Mr. Dicicco"), testified in his deposition that the BMW's airbag was not defective at the time of original sale. (*Id*; Doc. 49-1 at 39–40).

Mr. Dicicco indeed agreed during his deposition that the airbag inflators would "eventually develop the failure" but that the inflator would meet initial testing before sale. (Doc. 49-1 at 39). However, Plaintiffs sufficiently cite to portions of Mr. Dicicco's affidavit (Doc. 59 at 14) to show genuine disputes of material fact exist. For example, Mr. Dicicco states in his affidavit that that "[Federal Motor Vehicle Safety Standard] FMVSS 208, Sec. 9.2, requires '[a]ll explosive material [must] be enclosed in a structure that is

---

[3] See Martinez, 241 F.R.D. at 641 (citing Dart

- 5 -

capable of containing the explosive energy without sudden release of pressure except through overpressure relief devices or parts designed to release the pressure during actuation.'" (*Id*.)  Mr. Dicicco also states that "the propellant degradation which causes over-pressurization and inflator rupture takes over seven years to occur; therefore it would pass all PV and LAT testing conducted when the inflators are essentially brand-new." (*Id*.) Mr. Dicicco states that, in his opinion, "the exploding airbag inflator in the subject 2004 BMW 325i failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner and qualifies as a Design Defect." (*Id*. at 14–15).  Mr. Dicicco also opines that an alternate design, such as a pressure relief device, would have eliminated the defect.  (*Id*. at 15).

Moreover, the Court finds Defendant cannot show it is entitled to judgment as a matter of law.  Defendant reasons that, because the defect did not develop until later on, Plaintiff cannot prove its product liability claim.  (Doc. 49 at 7).  Not so.  *See Jones*, 411 F. Supp. 3d at 531 ("The knowledge of the risk attendant on a product's harmful characteristics is attributed to the manufacturer or seller as a matter of law . . . it is immaterial whether the manufacturer knew or should have known of the risk accompanying a product's harmful characteristics at the time the product was put on the market.").  In Arizona, "sellers may be held strictly liable for harm caused by defective and unreasonably dangerous products they have sold." *Grubb v. Do It Best Corp*., 230 Ariz. 1, 2, 279 P.3d 626, 627 (Ariz. Ct. App. 2012).  Entities which do not participate significantly in the stream of commerce and do not have the right to control the incidents of manufacture or distribution are excluded from liability, *see id*, but Defendant is not such as entity as it controls the distribution of BMWs in North America and initiated a recall due to this defect. (Doc. 49 at 3).  For instance, Defendant states in its own Motion that "BMW AG [] sold the vehicle to BMW NA for distribution in the United States." (*Id*. at 2).

Viewing these facts in the light most favorable to the nonmoving party, as the Court must, the Court finds that Plaintiffs have set forth "specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e).

### C.     State of the Art

Defendant next argues summary judgment is proper because its airbag conformed with state of the art design pertaining to the relevant inflator component at issue. (Doc. 49 at 9). Plaintiffs argue that this is not true as "[a] manufacturer or seller is presumed to have known at all relevant times the facts that this accident has revealed about the harmful characteristics or consequences of the product's design, whether or not the manufacturer or seller actually knew those facts."[4] (Doc. 59 at 6 (citing *Byrns v. Riddell, Inc.*, 550 P.2d 1065, 1068 (Ariz. 1976)).

In any products liability case in Arizona, a defendant is not liable if it proves that "the defect in the product is alleged to result from inadequate design or fabrication, and if the plans or designs for the product or the methods and techniques of manufacturing, inspecting, testing and labeling the product conformed with the state of the art at the time the product was first sold by the defendant." *Thompson v. Polaris Indus. Inc.*, 2019 WL 2173965, at *6 (D. Ariz. May 17, 2019) (citing A.R.S. § 12-683(1)). State of the art is defined as "the technical, mechanical and scientific knowledge of manufacturing, designing, testing or labeling the same or similar products that was in existence and reasonably feasible for use at the time of manufacturing." *Id*. (citing A.R.S. § 12-681(10)).

Here, to undermine Defendants' state of the art design defense, Plaintiffs again rely on their expert. Mr. Dicicco states in his affidavit that "there were alternative designs that could have been used that would have eliminated the design defect or allowed excessive pressure to vent safely and prevent inflator rupture." (Doc. 59 at 14). Mr. Dicicco also states in his affidavit that, in his opinion, "the exploding airbag inflator in the subject 2004 BMW 325i failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner and qualifies as a Design Defect." (*Id*. at 14–15). Mr. Dicicco opines that an alternate design, such as a pressure relief device, would

---

[4] The Court notes that it could not find this quoted material in *Byrns* and admonishes Plaintiffs misquote of relevant case law. A similar quote is found in *Golonka v. General Motors Corp.*, however: "the knowledge revealed by the accident and the evidence presented at trial is additionally imputed to the manufacturer." 65 P.3d 956, 963 (Ariz. Ct. App. 2003).

have eliminated the defect.  (*Id*. at 15).  This evidence directly contradicts Defendant's state of the art defense.  *See* A.R.S. § 12-681(10)

As well, Defendant's only rely on Plaintiffs' Expert to meet their burden, but they do not provide evidence regarding whether the Takata airbag provided the best and most feasible design at the time of its manufacture.  *Feuerstein v. Home Depot, U.S.A., Inc*., 2014 WL 2557122, at *3 (D. Ariz. June 6, 2014).  As well, Defendant's do not provide any evidence of thoroughness of experimentation or research prior to manufacture, which is "appropriate evidence for [a] state of the art defense." *Id*. at n. 16.

Because Defendant bears the burden of proof on this issue at trial it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984.  Reviewing the above evidence in the light most favorable to Plaintiffs, the Court finds that Defendant has not done so because a reasonable juror could find that the Takata airbag did not conform with the state of the art at the time the product was first sold by Defendant. *Thompson*, 2019 WL 2173965, at *6.  To find for Defendant, the Court would necessarily need to make credibility determinations on Mr. Dicicco's testimony and weigh the conflicting evidence—something the Court cannot do at this stage.  *See T.W. Electric Service, Inc*., 809 F.2d at 630-31.  As well, "unless reasonable minds could not differ, the determination of whether a product is state of the art is a question of fact for the jury." *Bauerline v. Equity Residential Properties Mgmt. Corp*., 2006 WL 3834285, at *8 (D. Ariz. Dec. 29, 2006).  Thus, Defendant is not entitled to summary judgement on its state of the art defense.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 49) is **DENIED**.

**IT IS FURTHER ORDERED** that in light of Plaintiff's remaining claims for breach of contract, the parties are directed to comply with Paragraph 10 of the Rule 16 Scheduling Order (Doc. 17 at 6) regarding notice of readiness for pretrial conference.  Upon a joint request, the parties may also seek a referral from the Court for a

settlement conference before a Magistrate Judge.

**IT IS FINALLY ORDERED** that Plaintiff's Motion for Judicial Notice (Doc. 48) is **DENIED** without prejudice to renew.  Plaintiff may renew this Motion for the Court's consideration prior to trial as a Motion *in Limine* once the Court issues its Order Setting Final Pretrial Conference.  Defendant's Motion to Strike (Doc. 58) is also necessarily **DENIED**.

Dated this 22nd day of February, 2024.

Honorable Diane J. Humetewa
United States District Judge