1  **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9   Maria Griego, et al.,                          No. CV-22-01281-PHX-DJH

10                  Plaintiffs,                     **ORDER**

11  v.

12  BMW of North America LLC,

13                  Defendant.

14

15         Before the Court are thirteen Motions in Limine: seven motions filed by Defendant

16  BMW of North America LLC ("Defendant") (Docs. 73–76; 90–91) and six motions filed

17  by Plaintiffs Maria Griego ("Plaintiff Griego")[1] and Robert Romero ("Plaintiff Romero"),

18  statutory beneficiaries and parents of the decedent (collectively, "Plaintiffs") (Docs. 77–

19  80; 87). Each party has filed Responses in Opposition to the other party's Motions, which

20  the Court has reviewed. (Docs. 97–110). The Court will address each Motion in turn.[2]

21  **I.    Background**

22         Plaintiffs allege that Decedent Roberto Griego-Romero ("Decedent") was killed

23  when Plaintiff Griego's 2004 BMW 325i ("the BMW") collided with another vehicle

24  causing the BMW's airbag, manufactured by the Takata Corporation ("Takata"), to deploy

25  and shoot metal shrapnel into Decedent's abdominal area. (Doc. 1 at ¶ 1). Due to this,

26

27  ---

    [1] The Decedents mother, Maria Griego, passed away on February 25, 2024. (Doc. 70).

28  [2] For Defendant's Seventh Motion in Limine (Doc. 91), as discussed below, the Court will withhold its ruling and discuss the Motion and Response   with the parties at the Final Pretrial Conference.

1    Plaintiffs brought a claim of strict products liability against Defendant on Decedent's
2    behalf.  (*Id*. at ¶¶ 8–13).  Takata designed and manufactured the driver's front airbag
3    components at issue. (*See* Doc. 12 at ¶ 9).  Takata is not a party to this suit.  Defendant
4    states that Plaintiffs received settlement payments from the Takata trust fund created to
5    compensate victims of its airbag components after Takata declared chapter 11 bankruptcy
6    and became defunct.  (Doc. 92 at 2).

7    **II.    Legal Standards**

8        **A.    Motions in Limine**

9        "Although the Federal Rules of Evidence do not explicitly authorize in limine
10   rulings, the practice has developed pursuant to the district court's inherent authority to
11   manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n.4 (1984).  Motions
12   in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having
13   to present potentially prejudicial evidence in front of a jury." *Brodit v. Cabra*, 350 F.3d
14   985, 1004–05 (9th Cir. 2003) (citations omitted).  Motions that seek exclusion of broad and
15   unspecific categories of evidence are disfavored.  *See Sperberg v. Goodyear Tire and
16   Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).  Motions in limine are "entirely within the
17   discretion of the [trial] Court." *Jaynes Corp. v. American Safety Indem. Co.*, 2014 WL
18   1154180, at *1 (D. Nev. March 20, 2014) (citing *Luce*, 469 U.S. at 41–42).

19       However, motions in limine are "provisional" in nature.  *Goodman v. Las Vegas
20   Metro. Police Dep't*, 963 F.Supp.2d 1036, 1047 (D. Nev. 2013), *aff'd in part, rev'd in part,
21   and dismissed in part on other grounds*, 613 F. App'x 610 (9th Cir. 2015).  The Court
22   issues its rulings on these motions based on the record currently before it, therefore, rulings
23   on such motions "are not binding on the trial judge [who] may always change his [or her]
24   mind during the course of a trial." *Id*. (quoting *Ohler v. United States*, 529 U.S. 753, 758
25   n.3 (2000) (citing *Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to
26   change, especially if the evidence unfolds in an unanticipated manner))).  "'Denial of a
27   motion in limine does not necessarily mean that all evidence contemplated by the motion
28   will be admitted at trial.  Denial merely means that without the context of trial, the court is

1    unable to determine whether the evidence in question should be excluded.'" *Id*. (quoting

2    *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004)).

3    **B.    Relevance**

4    Federal Rule of Evidence 401[3] provides that "[e]vidence is relevant if it has any

5    tendency to make a fact more or less probable than it would be without the evidence and

6    the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Under Rule 402,

7    relevant evidence is admissible unless otherwise provided.  Fed. R. Evid. 402.  However,

8    all relevant evidence is subject to the balancing test set forth by Rule 403.  That is, a court

9    "may exclude relevant evidence if its probative value is substantially outweighed by a

10   danger of one or more of the following: unfair prejudice, confusing the issues, misleading

11   the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

12   Fed. R. Evid. 403.

13   **C.    Expert Witnesses**

14   Rule 702 of the Federal Rules of Evidence tasks the trial court with ensuring that

15   any expert testimony provided is relevant and reliable.  *Daubert v. Merrell Dow Pharm.,*

16   *Inc.*, 509 U.S. 579, 589 (1999).  A qualified expert may testify based on their "scientific,

17   technical, or other specialized knowledge" if it "will assist the trier of fact to understand

18   the evidence."  Fed. R. Evid. 702(a).   An expert may be qualified to testify based on his

19   or her "knowledge, skill, experience, training, or education."  *Id.*  The expert's testimony

20   must also be based on "sufficient facts or data," be the "product of reliable principles and

21   methods," and the expert must have "reliably applied the principles and methods to the

22   facts of the case."  *Id*. at 702(b)–(d).  The trial court must first assess whether the testimony

23   is valid and whether the reasoning or methodology can properly be applied to the facts in

24   issue.  *Daubert*, 509 U.S. at 592–93.  "The inquiry envisioned by Rule 702" is "a flexible

25   one."  *Id*. at 594.  The proponent of expert testimony has the ultimate burden of showing

26   that the expert is qualified and that the proposed testimony is admissible under Rule 702.

27   *See Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

28
_____
[3] Except where otherwise noted, all Rule references are to the Federal Rules of Evidence.

That the opinion testimony aids, rather than confuses, the trier of fact goes primarily to relevance.  *See Temple v. Hartford Ins. Co. of Midwest*, 40 F.Supp. 2nd, 1156, 1161 (D. Ariz. 2014) (citing *Primiono v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010)). "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action."  Fed. R. Evid. 401. However, an expert witness, "cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law."  *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (internal citations omitted); *see also* Fed. R. Evid. 704.

## III.   Discussion

Defendant has filed seven Motions in Limine seeking to: (1) limit Plaintiffs' expert, Mr. Michael DiCicco, from testifying to the adequacy of Defendant's recall outreach efforts (Doc. 72); (2) exclude references to Federal Motor Vehicle Safety Standards as "minimal" (Doc. 73); (3) exclude references to Defendant as the "manufacturer", "OEM," or "designer" of the BMW (Doc. 74); (4) exclude references to Defendant's attorneys' representation in other litigation, resources devoted to their defense, or their comparative size and wealth (Doc. 75); (5) preclude lay witnesses from offering expert opinions, irrelevant evidence, references to pre-trial motion and discovery practice, and references to plaintiffs as "victims" (Doc. 76); (6) exclude evidence of injury, medical records, medical examiner testimony/reports, photographs or videos of injury  (Doc. 90); and (7) strike plaintiffs' witnesses: Richard Romero, Lorrain Romero, and Analia Romero as untimely disclosed (Doc. 91).  Defendant also filed a Motion for Leave to list non-party Takata on the Verdict Form and identify Takata as a non-party at fault (Doc. 92).

Plaintiffs have filed six of their own Motions in Limine, seeking to: (1) preclude Plaintiff Romero's criminal history and related illicit substance use history (Doc. 77); (2) preclude evidence relating to Decedent's driving without a license (Doc. 78); (3) preclude evidence related to use or nonuse of seatbelts (Doc. 79); (4) preclude evidence related to previous settlements with non-parties (Doc. 80); (5) exclude any mention of Takata not included in Defendant's disclosures; and (6) exclude mention of any non-parties allegedly

1  at fault (Doc. 87).  Each party has responded to each motion.  The Court will address each

2  Motion in turn.

3     A.     **Defendant's Motions in Limine**

4        1.     **Defendant's First Motion in Limine (Doc. 72)**

5        Defendant first argues that the Court should not allow Mr. DiCicco to testify to the

6  adequacy of Defendant's outreach as it is unfairly prejudicial, may confuse the issues, or

7  may mislead the jury and because it is beyond the scope of his expertise.  (Doc. 72 at 2).

8  Defendant also notes that Mr. DiCicco did not discuss its recall efforts in his expert report.[4]

9  (*Id.* at 1).  Plaintiffs argue that the "standard for admissibility of expert testimony does not

10 require absolute certainty but rather a sound basis derived from a reliable methodological

11 process, which can include experience and a holistic review of the material facts."

12 (Doc. 110 at 3).  Plaintiffs also argue that an authorized BMW dealership failed to perform

13 the mandated Takata airbag recall on the subject vehicle and that this is detailed in Mr.

14 DiCicco's report and attached as an exhibit.  (*Id.* at 2).  The Court generally agrees with

15 Defendant as the Court's "gatekeeping function requires more than simply 'taking the

16 expert's word for it.' "  *McGough v. Penzone*, 2021 WL 1575054, at *5 (D. Ariz. Apr. 22,

17 2021) (citing Fed. R. Evid. 702 advisory committee's notes to 2000 amendments).

18       During his deposition, Mr. DiCicco was asked if he has offered any opinions on

19 BMW's recall efforts in his expert report, to which he replied, "I mean, there is a one area

20 I could expand upon that may be is not spelled out very clearly in my report."  (Doc. 110-

21 2 at 23).  Mr. DiCicco was also asked if he "had any understanding regarding specific recall

22 outreach attempts for this particular vehicle, and he stated that he has seen the recall

23 documents being sent to customers, the recall procedure and "things like that."  (*Id.* at 35).

24 Mr. DiCicco also stated that "recalls [are a] part of a vehicle[s] design."  (*Id.* at 23).

25 However, Mr. DiCicco also states that he does not have any "specific understanding as to

26 the recall outreach efforts for this particular vehicle."  (Doc. 72 at 140).  Plaintiff points

27 _____

28 [4] The Court notes that Federal Rule of Civil Procedure 26(a)(2) requires expert witnesses to provide a written report containing "a *complete statement* of *all* opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B)(i).

the Court to part of Mr. DiCicco's deposition where he states, "I feel there should have been a better message or program or requirement that, when you[r] dealership ha[s] a car in [its] possession and there's open recalls, that those need to be taken care of right away." (Doc. 110-2 at 24).

Without more, Mr. DiCicco's opinion on this topic cannot be said to be based on "sufficient facts or data"—one of Rule 702's threshold requirements for expert testimony to be admissible. Fed. R. Evid. 702(b). Because of this, the Court will not allow Plaintiff to discuss any recall efforts as they relate to the BMW owned by Plaintiff Griego and driven by Decedent—however, Mr. DiCicco may testify to Defendant's recall efforts regarding BMW 325i vehicles generally. Of course, Plaintiffs may lay more foundation for this opinion at trial, *see Goodman* 963 F.Supp.2d at 1047, but at this juncture, given the record before it, the Court will limit Mr. DiCicco from testifying about Defendant's recall outreach efforts during trial.

Thus, the Court partially grants Defendant's First Motion in Limine (Doc. 72).

## 2.    Defendant's Second Motion in Limine (Doc. 73)

Defendant next seeks to preclude any testimony referring to the Federal Motor Vehicle Safety Standards ("FMVSS") as "minimal" or "outdated." Defendant argues that such improper references are incorrect and present a substantial risk under Rule 403 of confusing and misleading the jury. (Doc. 73 at 1). Plaintiff opposes this Motion, arguing that their reference to FMVSS as "minimal" is "not to undermine their importance or suggest non-compliance by [Defendant], but rather to emphasize that these standards represent the minimum safety thresholds necessary to protect the public from unreasonable risks and that vehicles should aspire to exceed these baselines for enhanced consumer safety." (Doc. 99 at 1). The Court agrees with Defendant.

The FMVSS were first promulgated under the National Traffic and Safety Motor Vehicle Safety Act of 1966, which was later recodified in 1994 in Title 49 of the U.S. Code. The Act defines "motor vehicle safety" as "the performance of a motor vehicle . . . in a way that protects the public against unreasonable risk of accidents

occurring because of the design, construction, or performance of a motor vehicle, and against unreasonable risk of death or injury in an accident, and includes nonoperational safety of a motor vehicle."   49 U.S.C. § 30102(9).   It further directs the Secretary of Transportation to prescribe "motor vehicle safety standards," which are "minimum standard[s] for motor vehicle or motor vehicle equipment performance."   49 U.S.C. §§ 30111(a), 30102(10).

The Secretary has clarified that the use of the word "minimum" in this context "do[es] not equate with 'minimal' performance standards" or "refer to the substantive content of the standards."  40 Fed. Reg. 2,392 (Jan. 16, 1976).  Rather, it "refers to their legal status–that the products covered must not fall short of them."  *Id*.  Accordingly, the Court agrees with Defendant that any probative value in referring to the FMVSS as "minimal" or "outdated" is outweighed by the risk of misleading or confusing the jury to view the federal standards as insignificant, inconsequential, or negligible.

The Court therefore grants Defendant's Second Motion in Limine (Doc. 73).

### 3.   Defendant's Third Motion in Limine (Doc. 74)

In this Motion in Limine, Defendant seeks to preclude Plaintiff from referring to it as the manufacturer, OEM or designer of the BMW.  (Doc. 74 at 1).  Defendant states that BMW AG is the German manufacturer of BMW automobiles whereas BMW NA is a United States distributor.  (*Id*. at 2).  Thus, Defendant argues that improper references "would inaccurately portray the complex business relationship between BMW NA and BMW AG, two separate legal entities."  (*Id*. at 3).  BMW NA further argues improper references would confuse the issues of the case, mislead the jury, and prejudice BMW NA's defense under Rule 403.  (*Id*.)  Plaintiffs oppose this motion based on the statutory definitions provided in A.R.S. § 12-681(1) and (5), and argue that Defendant, through its role in the distribution chain, effectively acts as a manufacturer in terms of strict liability for defective products.  (Doc. 99 at 1).

In Arizona, the principles of comparative fault codified in A.R.S. § 12-2506 are applicable to the participants in the chain of distribution of an allegedly defective product.

*State Farm Ins. Companies v. Premier Manufactured Sys., Inc.*, 213 Ariz. 419, 420, 142 P.3d 1232, 1233 (Ct. App. 2006).  Liability for a defective product "extends to all those involved in its distribution, including manufacturers of component parts, dealers, distributers, or retail sellers."  *Id.*  However, references to Defendant as the manufacturer or designer of the subject vehicle are factual misrepresentations that would be prejudicial to Defendant.  *See* Fed. R. Evid. 403.  Whether Defendant is a manufacture, designer, or distributer is not a fact of consequence in determining the action.  *See* Fed. R. Evid. 401(b).  Thus, the Court will not allow Plaintiffs to refer to Defendant as the manufacturer, OEM or designer of the BMW; unless they can substantiate their claim that Defendant "effectively acts as a manufacturer in terms of strict liability for defective products."  (Doc. 99 at 1).

The Court therefore grants Defendant's Third Motion in Limine (Doc. 74).

### 4.        Defendant's Fourth Motion in Limine (Doc. 75)

Next, Defendant seeks to preclude Plaintiffs from referencing "Bowman and Brooke, LLP's representing or speaking for the automotive industry generally, to the amount of fees paid to BMW's experts in other matters, and to the comparative size and wealth of BMW." (Doc. 75 at 1).  Obviating the need for the Court's consideration, Plaintiffs respond that they informed Defendant, in its meet and conferral, that they "did not have intention of introducing at trial any particulars concerning BMWs size and wealth."[5]  (Doc. 103 at 1).  Plaintiffs did not, however, specifically state their intention as to Bowman and Brooke LLP's representation of "the automotive industry, generally," and the Court does not find such reference as probative or relevant on the issues to be tried. See Fed. R. Evid. 401; 403.  So, the Court precludes Plaintiff from introducing such a statement.

Defendants ask the Court to preclude Plaintiffs from asking its experts, Nathan Dorris and Robert C. Lange, about the amount of fees they were paid by Defendant.  Rule

---

[5] This Motion appears to be routinely filed by Defendant's counsel.  *See* 3:20-cv-08296-ROS, ECF No. 174 (D. Ariz. Jun. 26, 2023).  Yet, although Plaintiffs claimed no intention of raising it, Defendant still felt compelled to ask the Court to consider it.

26(a)(2)(B) governs disclosures of expert testimony.  Section (2)(B)(vi) requires a party to disclose "a statement of the compensation to be paid for the study and testimony of the case."  Fed. R. Civ. P. 26(a)(2)(B)(vi).  The Rule contemplates that such disclosures about "*the case*" is therefore relevant.  The Court agrees with Plaintiff that the fees paid to Defendant's experts in this case may be of probative value to the jury's determination of what weight to give their testimony.  The amount of fees paid in other cases is not relevant to the claim here, however.  Therefore, Plaintiff may inquire of the testifying experts the fees that they received from Defendant in this case.

Accordingly, the Court grants, in part and denies in part Defendant's Fourth Motion in Limine (Doc. 75).  Plaintiff may inquire of the experts the fees paid to them in this case by Defendant.  In all other respects, the Motion is granted.

### 5.     Defendant's Fifth Motion in Limine (Doc. 76)

Defendant seeks an Order generally precluding Plaintiffs from "attempting to make reference to or offer various forms of irrelevant, improper, and/or inflammatory evidence" as irrelevant, highly prejudicial, confusing and misleading.[6]  (Doc. 76 at 1).  Defendant then goes on to describe, without detail, whole categories of evidence they say Plaintiff's "may" offer and which Defendant seeks to preclude.  (*Id*. at 2–3).  Understandably, Plaintiff's Response does not attempt to address the vague references to unknown evidence.  (Doc. 100).  So, the Court cannot issue a preclusive ruling on evidence or testimony of which it is not made specifically aware.

Defendant does clearly state that it seeks an Order precluding Plaintiff from "any outrageous and inflammatory or argumentative statements . . . including references to Plaintiffs as 'victims.'"  (Doc. 76 at 3).  Defendant states that this term incorrectly implies the existence of a criminal proceeding and would be unfairly prejudicial.  (*Id*.)  Plaintiff, citing Black's Law Dictionary, counters that the term "victim" refers to "a person harmed by a crime, tort, or other wrong."  (Doc. 100 at 2).  The Court notes that the parties stipulate that Decedent "died as a result of the injuries sustained in the incident due to shrapnel being

---

[6] This Motion appears to be boilerplate and standardly filed by Defendant's counsel.

1  propelled from the driver airbag inflator into his body." (Doc. 86 at ¶ 8).  These stipulated

2  facts infer that Decedent is a victim because he was harmed by a tort.  The term "victim"

3  does fit his circumstance and courts note that the "mere use of the term ["victim"] does not

4  prejudice a Defendant, as it may be a 'fair comment on the evidence.' *See United States v.*

5  *Perez*, 2014 WL 12698229 at *9 (C.D. Cal. May 15, 2014) (citations omitted).  Yet, the

6  Court also notes that the manner and frequency of its use may ultimately result in a

7  prejudicial effect as it may influence the jury's ultimate decision.  *See* Fed. R. Evid. 403.

8  Accordingly, Plaintiffs are precluded from describing Decedent or the named Plaintiffs as

9  "victim(s)."  Rather, Plaintiffs may refer to him by his sir name, first name or other family

10  name, the "decedent," or "deceased."

11      Therefore, it is Ordered, denying in part and granting in part Defendant's Fifth

12  Motion in Limine (Doc. 76).  Plaintiffs may not refer to Decedent or themselves as the

13  "victim" at trial.  The Motion is otherwise denied.

14              **6.      Defendant's Sixth Motion in Limine (Doc. 90).**

15      Defendant next seeks an order precluding Plaintiffs from introducing "evidence of

16  injury to [Decedent] including Medical Records, Medical Examiner Testimony/Reports,

17  Photographs or Videos of the injury or otherwise graphic in nature" as irrelevant because

18  they do not contest his injuries were caused by shrapnel for the airbag inflator.

19  (Doc. 90 at 2–3). Defendants state that this evidence would "only serve to invoke the

20  passion or sympathy of the jury." (*Id*. at 3). Plaintiff apparently agreed to not call the

21  medical examiner to testify, but otherwise responds that Defendant's Motion is overbroad,

22  requiring Plaintiff and the Court to speculate which items it regards as problematic[.]"

23  (Doc. 101 at 1).  The Court agrees.

24      First, Defendant's cited cases, *United States v. Weatherspoon* and *Settelgoode v.*

25  *Portland Public Schools* are not instructive because both are factually distinguishable from

26  this case and they are unhelpful in analyzing whether cause of death and/or injury evidence

27  is relevant to a products liability claim.[7]  And, although Defendants do stipulate that

28  ─────────────────────
[7] 410 F.3d 1142 (9th Cir. 2005) and 371 F.3d 503 (9th Cir. 2004), respectively, discuss
improper statements by counsel, not whether evidence was improperly admitted as

1    "[Decedent] died as a result of the injuries he sustained in the incident due to shrapnel
2    being propelled from the driver airbag inflator into his body" it may be necessary to provide
3    the fact finding jury with evidence of the effect of the airbag deploying in the manner
4    alleged.  However, where, as here, the Court has not been provided with the precise exhibits
5    and/or testimony sought precluded, it cannot make a definitive ruling.  So, the Court will
6    withhold its ruling and order Defendants to provide it, and Plaintiff, with the specific
7    photographs, reports and/or deposition testimony it seeks precluded.[8]

8           Accordingly, the Court will withhold its Order on Defendant's Sixth Motion in
9    Limine (Doc. 90).

10                  **7.     Defendant's Seventh Motion in Limine (Doc. 91)**

11          Finally, Defendant argues that the Court should strike Plaintiffs' witnesses: Richard
12   Romero, Lorrain Romero, and Analia Romero as untimely disclosed.  (Doc. 91).  Plaintiffs
13   state that good cause exists for the recent disclosure of these family damage witnesses,
14   given that lead witness and party, Plaintiff Maria Griego, recently passed away
15   unexpectedly.  (Doc. 102 at 1).  Plaintiffs further state that Defendant would suffer no
16   prejudice from these added witnesses because the "subject matter of family testimony has
17   been disclosed, no new witness' testimony is outside the scope of previously noticed
18   testimony, and no Trial date has been set."  (*Id.*)  The Court agrees, but notes that any
19   purported witness for this purpose may be subject to limited deposition before trial.

20          Thus, the Court will withhold its ruling on Defendant's Seventh Motion in Limine
21   (Doc. 91) and discuss this issue with the parties at the Final Pretrial Conference.

22          **B.     Plaintiffs' Motions in Limine**

23                  **1.     Plaintiff's First Motion in Limine (Doc. 77)**

24   Plaintiffs first seek to preclude Plaintiff Romero's criminal history and related illicit

25   _____

     prejudicial.
26
     [8] Defendant and Plaintiffs should meet and confer to determine whether any agreement can
27   be reached on these categories of evidence. And Defendant will cite to the specific
     statement(s) and/or pages it seeks precluded and not refer to whole pages of documents
28   without precise citation.

substance use history.  (Doc. 77).  Defendant argues that the Court should deny this Motion because of Plaintiffs' loss of consortium claim.  (Doc. 104 at 2).

Rule 404(b) controls the outcome of this issue.[9]  Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).  However, this evidence may be admissible for another purpose, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. at 404(b)(2).  If admissible, this evidence must meet Rule 403's balancing test. *United States v. Sangrey*, 586 F.2d 1312, 1314 (9th Cir. 1978).

Defendant avers that Mr. Romero is currently incarcerated and was incarcerated for much of Decedent's life, therefore, this evidence is directly relevant to his damages claims as they relate to the relationship between Mr. Romero and Decedent.  (Doc. 104 at 2).  It has been noted that "[p]eriods of incarceration reduce the amount of support and society that a prisoner can provide to his family." *Est. of Elkins v. Pelayo*, 2022 WL 1123117, at *26 (E.D. Cal. Apr. 14, 2022).  Time spent away during incarceration can affect "the nature and closeness" of a relationship for damages purposes. *Id*. at *27.  However, identification of the amount of time a plaintiff is incarcerated can be conveyed to a jury without identifying the specific offenses that caused the incarceration; the relevant information is the duration of incarceration, and knowledge of the fact of incarceration, not the reason for incarceration. *See id*.  The identification of specific offenses involved "provides little probative value, but offers a great danger of undue prejudice." *Id*.  "[S]ignificant periods of incarceration can be identified, [however,] the reasons for the incarcerations/the specific crimes involved [cannot] be admitted pursuant to Rule 403." *Id*. (citing *Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1194 (C.D. Cal. 2015)).

Here, Defendant does not seek to introduce so called "propensity evidence," which

---

[9] The Court also notes that, if Plaintiff Romero testifies at trial, any attempt to attack his credibility must comport with Rule 609. *See* Fed. R. Evid. 609(b) (stating that the probative value of evidence of a criminal conviction which occurred more than ten years ago must substantially outweigh its prejudicial effect).

1   is inadmissible under Rule 404(b), but evidence that Plaintiff Romero's loss of consortium

2   damages should be reduced due to a prolonged period of incarceration. (*See* Doc. 104 at

3   2). Relevant authority on this issue supports Defendant's position. *See Elkins*, 2022 WL

4   1123117, at *26–27. Thus, the Court will allow the introduction of evidence that Plaintiff

5   was incarcerated and for how long—but any evidence regarding why he was incarcerated

6   will not be permitted and could cause a mistrial if introduced, even by mistake. *See id*; *see*

7   *also* Fed. R. Evid. 404(b).

8          Accordingly, the Court denies Plaintiff's First Motion in Limine (Doc. 77).

9          **2.        Plaintiff's Second Motion in Limine (Doc. 78)**

10          Plaintiff next seeks an order precluding Defendant from introducing evidence

11   related to Decedent driving without a driver's license. (Doc. 78 at 1). Plaintiff asserts that

12   Decedent "was 16 years old and had a driving permit at the time of the accident" and that

13   his "lack of an adult driver's license is irrelevant and should not be admitted." (*Id*. at 1-2).

14   Plaintiff points out that Decedent "was not at fault for the accident" because another driver

15   failed to yield the right of way while turning from a private drive colliding with the BMW

16   causing the airbag to deploy. (*Id*.)

17          Defendant asserts that ""decedent's operation of the subject BMW without a

18   driver's license is relevant to [Defendant's] defense of contributory negligence and

19   comparative fault because 1) the jury can assess whether and to what extent the decedent's

20   lack of license contributed the incident, 2) whether fault can be imputed or attributed to a

21   claimant by operation of law, and 3) the decedents operation of a motor vehicle without a

22   license . . . demonstrates an ongoing pattern of ignoring warnings/laws by Plaintiffs and

23   the decedent." (Doc. 105 at 2). Defendant appears to assert that evidence of decedent's

24   and his mother's acts or inactions contributed to Plaintiffs' claims of products liability.[10]

25   ───────────────

[10] Defendant's generally cite "Exhibit A," a 37 page police report and "Exhibit B," a 106
page deposition, without page or line citations, to support their assertion that plaintiff Maria
Griego ignored the warnings to have the recall performed, ignored the law against
permitting her unlicensed minor son to drive the vehicle, that she did not teach her son to
heed the warnings and feedback from the vehicle to fasten his seat belt. (Doc. 105 at 7–
44, 46–152). The Court will not scour through 143 pages of their exhibits to find support
for these assertions. The Court will permit Defendants to provide it, and Plaintiff, with
specific page citations at the Final Pretrial Conference.

1    The Court notes that the parties Joint Proposed Pretrial Order relatedly includes a contested
2    issue of fact as to whether "[a]t the time of the subject incident, Maria Griego knew that
3    [Decedent] was not permitted to drive the Subject BMW by himself–without the presence
4    of a fully licensed driver–under Arizona law." (Doc. 86 at 4).

5    　　　　Defendant indicates that it intends the Court to ask the jury to "decide what effect,
6    if any, an unlicensed driver has on the comparative fault analysis under Arizona law" and
7    cites to A.R.S. § 28-3163.   (Doc. 105 at 3).   Defendant's argument is misplaced.
8    Here, another driver was at fault for the car accident that caused the BMW's airbag to
9    deploy.  There are no proffered facts supporting a claim of several liability "for damages
10   caused by the negligence or willful misconduct of the [unlicensed unaccompanied] minor
11   in driving the vehicle."  A.R.S. § 28-3163.  Though the decedent was a permitted driver,
12   and driving unaccompanied, those facts did not contribute to the chain of events that caused
13   the airbag to deploy.  Under Rule 401, evidence is relevant if it has any tendency to make
14   the existence of a fact of consequence more or less probable.  Fed. R. Evid. 401.  That
15   Decedent was unlicensed is not a fact of consequence to the jury's determination on
16   Plaintiffs products liability claim.  As such, this evidence is more prejudicial than it is
17   probative.  *See id.* at 403.  Therefore, Defendant is precluded from offering it at trial.

18   　　　　The Court will grant Plaintiff's Second Motion in Limine (Doc. 78).

19   　　　　　　**3.    Plaintiffs' Third Motion in Limine (Doc. 79)**

20   　　　　Plaintiffs' next Motion seeks an order precluding the Defendant from introducing
21   evidence "of any kind related to use or nonuse of seatbelts, because Defendants have failed
22   to establish or present any evidence as required."  (Doc. 79 at 1).  Defendant asserts that
23   "seatbelt usage is relevant to [Defendant's] defense of contributory negligence and
24   comparative fault because [sic] the decedent's lack of seat belt use demonstrates an
25   ongoing pattern of ignoring warnings/laws by decedent and his family." (Doc. 106 at 2).

26   　　　　Defendants stipulate that "[decedent] died as a result of the injuries he sustained in
27   the incident due to shrapnel being propelled from the driver airbag inflator into his body."
28   (Doc. 86 at 3 ¶ 8).  So, it is difficult to see how Decedents use or nonuse of a seatbelt is

relevant to a products liability claim.  Moreover, Plaintiff points out that Defendants have not provided evidence of decedents use or nonuse of a seatbelt and its effect on the airbag deployment or his fatal injuries. (Doc. 79 at 2).  Citing *Law v. Superior Court*, 755 P.2d 1135 (1988), Plaintiff asserts that the Defendant has the burden of proof to show the nonuse of a seatbelt caused or enhanced the decedent's injuries, and the Court agrees. The Court also agrees that non-disclosed evidence of seatbelt use cannot now be introduced to support a comparative fault defense.

Accordingly, the Court grants Plaintiff's Third Motion in Limine (Doc. 79). Defendant is precluded from introducing evidence of decedent's seatbelt use or nonuse.

### 4.    Plaintiffs' Fourth, Fifth and Sixth Motions in Limine (Docs. 80, 85 and 87)

Plaintiffs' Fourth, Fifth and Sixth Motions are interrelated, so the Court will address them simultaneously.  Plaintiffs seek to preclude evidence related to previous settlements with non-parties (Doc. 80), exclude any mention of Takata not included in Defendant's disclosures (Doc. 85) and exclude mention of any non-parties allegedly at fault (Doc. 87). Defendant has responded to each of these Motions (Docs. 107–09) and has also filed a Motion for Leave to list Takata on the verdict form.  (Doc. 92).

Plaintiffs seek to exclude evidence of previous settlements with "any individual or entity not currently a party to this action" and argues that such evidence is not admissible under Rules 401, 403 and 408.  (Doc. 80 at 1–2).  Plaintiffs argue that, because Defendant did not timely disclose Takata as a non-party at fault, that the Court should exclude any mention of Takata's liability for Decedent's injuries at trial.  (Doc. 85 at 3).  Plaintiffs finally argue that Defendant should not be allowed to mention other alleged non-parties at fault: Ms. Heather Conine (the BMW's prior owner), Mr. Timothy Watts (the driver who struck Decedent) and Plaintiff Griego, arguing that no mention of third-party fault is admissible in a strict liability action.  (Doc. 87 at 2–3).

Defendant states that it "does not intend to introduce evidence of settlements in its case-in-chief" but reserves the right to introduce this evidence during cross-examination

and if Plaintiffs were to receive a verdict to off-set their damages.  (Doc. 107 at 1–2).  Defendant also argues that it identified Takata's liability as an affirmative defense its Answer (Doc. 12) and that it was not necessary to include Takata on its Notice of Non-Parties at Fault pursuant to A.R.S. § 12-2506(B).  (Doc. 92 at 2–3).  Defendant specifically argues that notice is "a non-issue" because Plaintiffs received settlement payments from the Takata trust fund.  (*Id*. at 4).  Defendant finally argues that Arizona law requires the jury to consider evidence of the negligence or fault of non-parties that it has identified.  (Doc. 109 at 1).  For the following reasons, the Court will grant in part and deny in part.

### i.        Legal Standards

Rule 408 governs the admissibility of settlement discussions as evidence at trial.  Fed. R. Evid. 408.  The Rule prohibits the introduction of settlement negotiations or agreements to prove or disprove the validity or amount of a disputed claim, but states that such evidence may be admitted for "another purpose" such as "proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."  *Id*. at 408(b). Importantly, Rule 408 does not address liability or fault, specifically as it applies to non-parties at fault.  *See id*.

Under Arizona's version of the Uniform Contribution Among Tortfeasors Act ("UCATA"), a tort defendant may designate a non-party at fault and argue the non-party is responsible for all or part of the alleged negligence.  A.R.S. § 12–2506(B).  Section 12-2506(B) states, in pertinent part, that:

> In assessing percentages of fault the trier of fact *shall* consider the fault of all persons who contributed to the alleged injury, death or damage to property, regardless of whether the person was, or could have been, named as a party to the suit.  Negligence or fault of a nonparty ***may be considered if the plaintiff entered into a settlement agreement with the nonparty*** or if the defending party gives notice before trial, in accordance with requirements established by court rule, that a nonparty was wholly or partially at fault.

*Id*. (emphasis added).  A notice of non-party at fault is due no later than 150 days after a party files its answer.  Ariz. R. Civ. P. 26(b)(5).  Defendant filed its Answer (Doc. 12) on September 6, 2022.  150 days from September 6, 2022, is February 3, 2023.  Defendant

1    filed a Notice of Non-Parties at Fault (Doc. 20) within this 150-day limit but did not name

2    Takata as a Non-Party at Fault.  (*Id.*)  "The trier of fact may not allocate any percentage of

3    fault to a nonparty who is not disclosed in accordance with" Rule 26(b)(5) of the Arizona

4    Rules of Civil Procedure, except on the parties' stipulation or "on motion showing good

5    cause, reasonable diligence, and lack of unfair prejudice to all other parties." Ariz. R. Crim.

6    P. 26(b)(5).

7            The Arizona Supreme Court "has made clear that comparative fault principles apply

8    to strict product liability actions."  *Zuern v. Ford Motor Co*., 188 Ariz. 486, 491, 937 P.2d

9    676, 681 (Ct. App. 1996) (citing *Jimenez v. Sears, Roebuck & Co*., 183 Ariz. 399, 405, 904

10   P.2d 861, 867 (1995) (holding the UCATA requires "a factual determination of the

11   plaintiff's misuse as a relative degree of fault in allocating causal responsibility in a strict

12   products liability claim")).  Section 12-2506(B) compels "the assessment of nonparty fault

13   regardless of whether the nonparty was or could be made a defendant to the action," and

14   designating a nonparty at fault allows defendants "to offer trial evidence of [a nonparty's]

15   negligence and to argue that the jury should attribute all or some percentage of fault to [the

16   nonparty], thereby reducing Defendants' percentage of fault and consequent liability."

17   *Dietz v. General Elec. Co*., 169 Ariz. 505, 821 P.2d 166, 168–171 (1991),  Furthermore,

18   the UCATA, "expressly defines 'fault' to include 'strict liability,' § 12–2506(F)(2), all of

19   the different types of fault identified in that section, if contributing to the same injury, must

20   be compared in order to comply with the statutory mandate that 'the trier of fact shall

21   consider the fault of all persons who contributed to the alleged injury' in assessing

22   percentages of fault." *Zuern*, 188 Ariz. at 491 (citations omitted).

23           As for contributory negligence, that is, evidence that the plaintiff contributed to their

24   own injuries, "contributory negligence is not a defense in strict liability." *Jimenez*, 904

25   P.2d at 867 (citing Ariz. Rev. Stat. § 12-2509(B)).  However, the affirmative defenses of

26   assumption of the risk and product misuse provide a clear exception to this general rule.

27   *Id*. at 864.

28   / / /

### ii.    Analysis

For the reasons that follow, the Court will exclude evidence related to previous settlements with non-parties but will allow Defendant to argue that non-parties Takata, Ms. Conine, Mr. Watts and Mrs. Griego are partially or wholly at fault.

### a.    Takata

The Court first finds that Defendant's failure to designate Takata as a non-party at fault does not preclude them from arguing that they are at fault because, under Section 12-2506(B), the negligence or fault of a non-party "may be considered if the plaintiff entered into a settlement agreement with the nonparty." A.R.S. § 12–2506(B).  Plaintiff received settlement payments from the Takata trust funds (*see* Doc. 92 at 11–12), therefore, as Defendant argues, notice is a non-issue and Takata's negligence or fault "may be considered" since Plaintiffs entered into a settlement agreement with Takata. A.R.S. § 12–2506(B).

The Court also finds that Takata can be referenced as a non-party at fault even though this action is a strict products liability action.  *See Zuern*, 937 P.2d at 681 ("comparative fault principles apply to strict product liability actions.").  In fact, Section 12-2506(B) expressly requires that Defendant be able to argue that the jury should attribute all or some percentage of fault to Takata. *See id*. at 491 (discussing the statutory mandate under Section 12-2506(B) that "the trier of fact shall consider the fault of 'all persons who contributed to the alleged injury' in assessing percentages of fault.").  Thus, Defendant may introduce evidence and argue that Takata contributed to Decedent's injury and death and list Takata on the verdict form, as they seek to do.  (Doc. 92).  However, Defendant is prohibited from introducing evidence of settlement negotiations or agreements between Plaintiffs and Takata to prove or disprove the validity or amount of a disputed claim.  *See* Fed. R. Evid. 408.

### b.    Ms. Conine

The Court will allow Defendant to argue that Ms. Conine shares in its fault.  As Defendant argues (Doc. 109 at 1), and the Court illustrated above, Arizona law requires the

jury to consider evidence of the negligence or fault of non-parties that it has identified. A.R.S. § 12–2506(B).  Here, Defendant timely disclosed that Ms. Conine was the prior owner of the BMW and that she was provided multiple notifications informing her that a recall repair was necessary to prevent the potential risks posed by the Takata inflator. (Doc. 20 at 2).  Defendant also stated in its Notice that it believed Ms. Conine may be partially or wholly at fault for Decedent's injuries for failing to have the necessary recall repairs completed and for failing to warn Plaintiffs of the outstanding recall when she sold them the BMW.  (*Id.*)  Because Defendant timely notified Plaintiff that Ms. Conine may be wholly or partially at fault, it must be allowed to make this argument at trial.  A.R.S. § 12–2506(B); *Zuern*, 937 P.2d at 681.

### c.      Mr. Watts

The Court will also allow Defendant to argue that Mr. Watts is at fault.  Mr. Watts was the driver of the vehicle that struck Decedent's BMW.  (Doc. 20).  Defendant avers that Mr. Watts failed to yield to traffic while turning left, and consequently may be partially or wholly at fault for the incident and Decedent's injuries.  (*Id.*)  Defendant also timely disclosed that Mr. Watts caused the accident which cause the BMW's airbag to deploy. (*Id.* at 20).  This action is a strict products liability action, but the UCATA, "expressly defines 'fault' to include 'strict liability'" and "all of the different types of fault identified in [Section 12-2506(F)(2)[11]], if contributing to the same injury, ***must*** be compared in order to comply with the statutory mandate that 'the trier of fact shall consider the fault of all persons who contributed to the alleged injury' in assessing percentages of fault." *Zuern*, 937 P.2d at 681 (citations omitted) (emphasis added).  Thus, the Court must also allow Defendant to argue Mr. Watts negligence or fault because it timely notified Plaintiff that Mr. Watts may be wholly or partially at fault.  *Id.*

/ / /

---

[11] Section 12-2506(F)(2) provides that "Fault" means "an actionable breach of legal duty, act or omission proximately causing or contributing to injury or damages sustained by a person seeking recovery, including negligence in all of its degrees, contributory negligence, assumption of risk, strict liability, breach of express or implied warranty of a product, products liability and misuse, modification or abuse of a product." A.R.S. § 12-2506(F)(2).

1

### d.      Plaintiff Griego

2       The Court finally finds that Plaintiff Griego, the owner of the BMW who allowed

3  Decedent to drive the vehicle, can be listed as a non-party at fault as well.  Generally,

4  "contributory negligence is not a defense in strict liability."  *Jimenez*, 904 P.2d at 867

5  (citing Ariz. Rev. Stat. § 12-2509(B)).  However, the affirmative defenses of assumption

6  of the risk and product misuse provide a clear exception to this general rule.  *Id*. at 864.

7  The Arizona Supreme Court has explained that "a plaintiff who voluntarily and

8  unreasonably encounters a known danger has assumed the risk and cannot recover on a

9  strict liability claim."  *Id*.  Unlike assumption of risk, a plaintiff's contributory negligence

10  is not a defense to strict liability because "no duty rests upon the ultimate consumer or user

11  to search for or guard against the possibility of product defects."  *Id*.  The differences

12  between a plaintiff's contributory negligence and assumption of risk have been explained

13  as a "failure to discover a defect in the product which the plaintiff should, if he was

14  reasonably diligent, have discovered is contributory negligence" and "notwithstanding the

15  discovery of such a defect, if the plaintiff nevertheless uses the article it is [an] assumption

16  of risk."  *Id*. (internal quotations and brackets deleted).  Therefore, a plaintiff's conduct is

17  relevant where assumption of the risk has been plead as an affirmative defense.  *See*

18  *Jimenez*, 904 P.2d at 864–65.

19       Here, Defendant pled in its Answer that "Decedent or his agents assumed the risk

20  of the injuries and damages alleged as a result of the events set forth in plaintiffs'

21  Complaint, and that such assumption of the risk bars or limits plaintiffs' recovery."

22  (Doc. 12 at ¶ 23).  So, to the extent Defendant can substantiate that Plaintiff either was

23  made aware of the risk or could have discovered the risk if she was reasonably diligent and

24  used the product anyway, Defendant may argue that she shares in Defendants fault and list

25  her on the verdict form.  *See Jimenez*, 904 P.2d at 864.

26       Thus, for the reasons stated above, Defendant may argue that the jury should

27  attribute all or some percentage of fault to Takata, Ms. Conine, Mr. Watts and Plaintiff

28  Griego; but may not introduce evidence related to previous settlements to prove or disprove

- 20 -

the validity or amount of a disputed claim.

Accordingly,

**IT IS ORDERED** that Defendant's Second (Doc. 73), Third (Doc. 74) and Plaintiffs' Second (Doc. 78) and Third (Doc. 79) Motions in Limine are **GRANTED**. Defendant's Motion for Leave to List Takata on the Verdict Form (Doc. 92) is also **GRANTED**.

**IT IS ALSO ORDERED** that Plaintiff's First (Doc. 77), Fifth (Doc. 85) and Sixth (Doc. 87) Motions in Limine are **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's First (Doc. 72), Fourth (Doc. 75) and Fifth (Doc. 76) Motions in Limine and Plaintiffs' Fourth Motion in Limine (Doc. 80) are **GRANTED** in part and **DENIED** in part.

**IT IS FINALLY ORDERED** that the Court will withhold ruling on Defendant's Sixth (Doc. 90) and Seventh (Doc. 91) Motion in Limine until the Final Pretrial Conference is held on May 9, 2024.

Dated this 7th day of May, 2024.

_____
Honorable Diane J. Humetewa
United States District Judge